Feder v. Van Winkle.

CHARLES FEDER, appellant,

*v.*

JOHN A. VAN WINKLE, receiver, respondent.

1. Chattels must, to constitute them fixtures, be actually annexed to the real estate or something appurtenant thereto. They need not necessarily be attached to the building; that is one way of annexing them to the soil, but not the only way.

2. To satisfy this test, it is not material whether the substructure is brick or wood, or whether the machinery is annexed to the building or rests upon a foundation securely laid for it in the soil, and to which it is fastened.

3. The fact that the chattels in controversy may be removed and sold for other uses, or that they were not made for special adaptation to the buildings in which they are placed, is not decisive of their character. Those qualities are mere circumstances to be considered.

4. There must be actual annexation with an intention to make a permanent accession to the freehold, but it is not necessary that there be an intention to make the annexation perpetual. The intention must exist to incorporate the chattels with the real estate for the uses to which the real estate is appropriated, and there must be the presence of such facts and circumstances as do not lead to but repel the inference that it is intended to be a temporary annexation.

5. The chattels in this case were actually annexed to the freehold; they were fitted for and applied to the use to which the real estate was appropriated, all being designed for and necessary to the prosecution of a common purpose. Thus the machinery and land became unified and incorporated together as a whole, subject to the lien of the real estate mortgage.

Feder v. Van Winkle.

On appeal and cross-appeal from a decree of the chancellor, dated February 11th, 1895, in *Brown* v. *Riverside Bridge and Iron Works*, an insolvent corporation, on the application of the receiver of said corporation.

*Mr. John W. Griggs*, for Feder.

*Mr. Eugene Stevenson*, for the receiver.

The opinion of the court was delivered by

Van Syckel, J.

The controversy in this case is between the appellant, who has a real estate mortgage, and John A. Van Winkle, receiver of the Riverside Bridge and Iron Works, an insolvent corporation, and relates to certain machinery which was used in its business of manufacturing structural and bridge iron. The said company had been engaged for fourteen or fifteen years in carrying on its business prior to its insolvency.

It occupied a tract of about two acres of land, on which the buildings in which the business was carried on were erected.

The buildings were—

1. The main shop, sixty by one hundred and sixty feet. It was a mere shed, having no floor except the natural earth.

2. The office building.

3. The blacksmith shop, which also had no floor.

4. The storehouse.

5. The foundry, which had no floor.

6. The machine shop, which was part of the main shop and had a wooden floor.

7. The templet shop on the second floor over a part of the main shop.

8. The engine-room, from which power was supplied to the different machines.

All the buildings were frame, and were practically joined together as one enclosure, the pipes, shafting and other appliances running from one into the other. The appellant held a

mortgage, given May 15th, 1889, which covered the real estate by its description, and also contained the following clause:

"Also all steam engines, boilers, shafting, belting, pulleys, hoisting apparatus and all other machinery whatsoever, with all connections, fixtures and appurtenances thereto belonging upon said premises or in the buildings erected thereon or any of them."

This mortgage was duly recorded as a real estate mortgage on the day it bears date.

In order to establish the claim of the mortgagee to the machinery as against the receiver, it must appear:

*First.* That the chattels were actually annexed to the real estate or something appurtenant thereto.

*Second.* That they were applied to the use or purpose to which that part of the realty with which they were connected was appropriated.

*Third.* That they were annexed with the intention to make a permanent accession to the freehold.

This case must be adjudged by the law as propounded in the following cases in this court: *Blancke* v. *Rogers, 11 C. E. Gr. 563 ; Penn Insurance Co.* v. *Semple, 11 Stew. Eq. 575 ; Speiden* v. *Parker, 1 Dick. Ch. Rep. 292.*

The difficulty arises in applying the rule; each case must be determined according to its particular facts and circumstances.

The chattels must, to constitute them fixtures, be actually annexed to the real estate or something appurtenant thereto.

They need not necessarily be attached to the building; that is one way of annexing them to the soil, but not the only way.

A steam engine set upon a brick foundation laid in the earth without any attachment to the building is unquestionably a fixture.

In *Speiden* v. *Parker, supra,* a derrick set in the ground to hoist stone, and a track laid on ties in the ground on which cars were run, were held to be fixtures.

So that to satisfy this test, it is not material whether the substructure is brick or wood, or whether the machinery is annexed to the building, or rests upon a foundation securely laid for it in the soil, and to which it is fastened.

Neither is the fact that the things in question may be removed and sold for other uses, or that they were not made for special adaptation to the buildings in which they are placed, decisive of their character. Those qualities are mere circumstances to be considered, but the presence of them does not necessarily withdraw machinery from the real estate mortgage. A steam engine, to take on the qualities of a fixture, need not be made specially for the building in which it is planted. It may, like any other piece of mechanism, be removed and used with equal advantage in any other establishment for which it will furnish sufficient power.

The same observation will apply to other articles which, in the court below, were properly adjudged, in accordance with almost all cases on this subject, to be fixtures.

There must be actual annexation with an intention to make a permanent accession to the freehold, but it is not necessary that there be an intention to make the annexation perpetual. A test so severe would be impracticable in its application.

The intention must exist to incorporate the chattels with the real estate for the uses to which the real estate is appropriated, and there must be the presence of such facts and circumstances as do not lead to but repel the inference that it is intended to be a temporary annexation.

In *Blancke* v. *Rogers* two machines were the subject of controversy—a "number one, four-sided, inside moulding machine" and a "number one clipper, planer and matcher."

The opinion says that no adjustment was made of them to fit, in anywise, to the place where they were put for use. They were placed in the building, upon the floor of a room, without support. One was not attached in any way to the soil or building; the other was partially bolted to the floor with screw-bolts. They were movable in the building and were moved about at the convenience of the owner, and run from different parts of the shafting. *Blancke* v. *Rogers, 11 C. E. Gr. 565, 568.*

The learned justice who delivered the opinion of the court was clearly right in saying that, while such chattels may be so annexed to and incorporated into the realty as to become,

through the manner of annexation and the purpose of the owner,. a part of the freehold, yet there was an absence in that case of evidence to show such annexation and intention.

In *Penn Insurance Co.* v. *Semple* the machines were fastened to the floor by small screws, to steady them, and in their use some were moved from one place in the building to another.

This court said : " There was no evidence in any act of the owners, or in any circumstance growing out of the organiza-tion or manner of conducting the manufacturing establishment,. showing a design on the part of the owners to make a permanent addition of the property in dispute to the realty."

The later case of *Speiden* v. *Parker* was a controversy respecting the character of certain appliances used in connection with a stone quarry and dock in Essex county.

They consisted of three boilers, two engines, two hoisting gears, three derricks and a steam-pump, with connecting pipes,. valves and pulleys, all located in or near the quarry, and a railroad track laid from the quarry to the dock on Passaic river, to transport stone, and two derricks at the dock, to transport the stone to boats.

The stationary machinery was fastened in the ground and was used for the only purposes to which the real estate was put. Upon these facts this court rested its conclusion that these appliances were attached to the freehold with the intention of making them part thereof. The opinion of this court was unanimous and was concurred in by Mr. Justice Knapp, who delivered the opinion of the court in the two cases last cited.

Not one of the implements involved appeared to have been specially adapted to the place in which it was used—some were set in the earth—and all could have been removed and applied to the prosecution of a like business elsewhere.

The decision must rest upon the facts that the appliances were actually annexed ; that they were adapted to and used in the business for which the realty was held by the owner ; that a common purpose was to be promoted by attaching the chattels to the freehold ; that the just inference was that the annexation, was intended to continue so long as the business was prosecuted?

on those premises, and that the enterprise was intended to be permanent in the sense in which that term is used in business transactions—permanent as contradistinguished from temporary.

It will be necessary, therefore, to look at the controlling facts of this case before us to determine whether there was an absence of intention to incorporate the machinery with the real estate, as in the *Blancke Case,* or the presence of such intention, as in the *Speiden Case.*

The following is a brief statement of the machines included in the petition of appeal, and the manner of their annexation :

Numbers 1, 2, 4, 5, 8, 10, 12, 13, 20, 21, 25, 26 and 52 are heavy machines, most of them weighing from two thousand pounds to six thousand pounds. They rest upon large timbers laid in the earth to their full depth, and they are fastened to them by bolts running down through the timbers.

Numbers 49, 50 and 51, in addition to the heavy timbers to which they are fastened at the base, are also fastened down into a subfoundation of concrete, and for them the building was adapted by cutting holes, and running pipes from the boilers in the boiler-house, one hundred feet away.

Numbers 15, 16, 17 and 30 are fastened to columns of the shop by bolts, and other fastenings in some cases.

Numbers 5, 14 and 46 are fastened by iron or wooden rods, or both, let down from the beams or rafters above.

Numbers 28, 29, 40, 41, 42 and 45 are fastened to the floor by lag screws, which are heavy bolts with a screw. The lightest in weight is four hundred pounds, and the heaviest is eight thousand pounds.

Numbers 1 and 2 have power applied by a belt coming through a hole in the roof.

Numbers 45 and 46 were adapted for use by the adjustment of timbers and braces in the building, and the cutting of holes through the floor for running the belt.

In view of these facts, I am of the opinion that these chattels did not retain the character of personalty, as in the *Blancke Case,* but were transmuted into realty, and passed to the mortgagee as in the *Speiden Case.* In no respect was that case stronger for

the mortgagee than is this. If all the tests necessary to constitute the chattels fixtures were satisfied in that case, they surely are in this case.

The various appliances were actually annexed to the freehold. They were fitted for and applied to the use to which the real estate was appropriated, all being designed for and necessary to the prosecution of a common purpose. Thus the machinery and land became unified and incorporated together as a whole.

The business had been carried on for fourteen years, and save for business disaster might, and probably would, have been prosecuted indefinitely. The machinery employed, the mode of its annexation and manner of its use, in connection with the realty as an entirety, indicated not a temporary but a permanent accession.

The fact that the machines might be removed and utilized elsewhere will not, under the circumstances of this case, serve to sever them in legal contemplation from the freehold.

The decree below should be reversed as to all the articles above specified, and a decree rendered in accordance with the views herein expressed.

*For reversal*—GARRISON, GUMMERE, MAGIE, VAN SYCKEL, BOGERT, BROWN, KRUEGER, TALMAN—8.

*For affirmance*—LUDLOW, SMITH—2.