The petition of Harold A. Price, receiver of H.B. McDonald Construction Company, Incorporated, upon which an order to show cause was made directed to stockholders and creditors of the defendant corporation, and the Boonton National Bank, the holder of a chattel mortgage covering *Page 182 
chattels of the H.B. McDonald Construction Company, Incorporated, and Harry M. Ball, the holder of a mortgage upon real estate, alleges: (1) That certain of the creditors of the corporation claim that the affidavit annexed to the chattel mortgage is defective under section 4 (P.L. 1902 p. 487), and (2) that the chattel mortgage among other things covers a sand and gravel washing plant erected upon the real estate owned by Helen M. McDonald, which real estate is also covered by a mortgage executed by her and Henry B. McDonald, her husband, to Harry M. Ball, who claims that the stone crushing plant is a part of the real estate and covered by his mortgage. The matter is now before me on the return of the order to show cause.
The chattel mortgage in question is dated August 18th, 1932, and recites that it is made in consideration of $1. In addition to the sand and gravel washing plant, the mortgage covers three automobile trucks and two Erie shovels. The affidavit annexed to the mortgage says it was given for money loaned by the Boonton National Bank to the mortgagor:
"As evidenced by two certain promissory notes made by said H.B. McDonald Construction Co., Inc., to the order of said Boonton National Bank, which notes bear date December 30, 1931, and May 2, 1932, respectively, upon which two notes there is now due and owing to said Boonton National Bank the aggregate sum of Eight Thousand Two Hundred Forty-one and 72/100 ($8241.72) Dollars, and the agreement of said Boonton National Bank to further extend the time of the said H.B. McDonald Construction Co., Inc., to pay the amount due on the note of May 2, 1932, to November 2, 1932, and deponent further says that there is due on said mortgage the sum of Eight Thousand Two Hundred Forty-one and 72/100 ($8241.72) Dollars, with interest on $3000.00 from May 2, 1932, and withadjusted interest on $5241.72 from December 30, 1931."
(Italics mine.)
John B. Howell, vice-president of the Boonton National Bank, the affiant named in the affidavit annexed to the mortgage, testified that the note dated December 30th, 1931, was a demand note upon which there was a balance due of $5,241.72, and the note of May 2d 1932, was a time note for $3,000, payable in three months. *Page 183 
1. It is contended that the affidavit does not truthfully set forth the consideration for the mortgage because the balance due on the note of December 30th, 1931, of $5,241.72 includes interest, and since interest is not part of the money loaned, the affidavit is untrue. The affidavit must, of course, truthfully state the consideration, and a substantial deviation from the truth, however honestly made, will invalidate the mortgage as against creditors. Hunt v. Ludwig, 93 N.J. Eq. 314; affirmed,94 N.J. Eq. 158. The contention that interest is included in this item, however, rests upon a conclusion of counsel not supported by the evidence.
Next it is argued that "adjusted interest on $5,241.72 from December 30th, 1931," does not accurately set forth the amount due and to grow due upon the mortgage. (Italics mine.) It must be presumed that interest in excess of the lawful rate of six per cent. is not intended, and to that extent, the amount due and to grow due is definite. If adjusted upon a lower rate of interest, creditors may not be heard to complain. The decisions are otherwise if the affidavit overstates the amount due and to grow due. Finkel v. Famous Lunch Room Co., 100 N.J. Eq. 85; Hunt
v. Ludwig, supra. The testimony is silent as to what rate of interest is intended by this language. It is deemed of no importance for the reason stated. Certainly no intending creditor could be misled. Dawson v. Pine, 6 N.J. Mis. R. 774;143 Atl. Rep. 89. It should be the aim of the courts, when the mortgage is bona fide, to preserve and not to destroy. Howell v.Stone, 75 N.J. Eq. 289. The bona fides of the transaction surrounding the giving of the mortgage herein are not questioned. "The statute should not be used as an instrument of inequity any more than of fraud." Patrisco v. Nolan's Point Amusement Co.,10 N.J. Mis. R. 397; 159 Atl. Rep. 620.
2. In order to establish his claim the mortgagee of the realty must show (a) that the chattels were actually annexed to the real estate, or something appurtenant thereto; (b) that they were applied to the use or purpose to which that part of the realty, with which they were connected, was appropriated, and (c) that they were annexed with the intention *Page 184 
to make a permanent accession to the freehold. Each case must be determined according to its particular facts and circumstances.Blancke, Mulford and English v. Rogers Co., 26 N.J. Eq. 563;Speiden v. Parker, 46 N.J. Eq. 292; Feder v. Van Winkle,53 N.J. Eq. 370. Tested by the application of the foregoing rules, the testimony is that the plant was constructed by sinking footings in the ground two or three feet deep, eighteen inches wide, erecting a form approximately one foot above grade and filling the trench with concrete. Bolts were inserted through the concrete and wooden sills twelve inches by twelve inches, and bolted on top of the concrete. On the top of the sills are twelve-inch by twelve-inch uprights on the top of which is a timber plate, on which the beams rest. The structure is about fifty feet in height, sixty feet long and fifteen feet wide. Two photographs in evidence show the character of the structure, the upper portion of which is wood. The structure is used to take gravel, sand and dirt, elevate these materials, screen and wash them; segregate the gravel into different sizes, and place the sand in separate bins. The entire plant can be dismantled and taken down in sections. Everything above the sill is separate from the foundation.
The realty is owned by Helen M. McDonald, the wife of Henry B. McDonald. There was no fixed rental arrangement between the corporation and Mrs. McDonald. However, an arrangement was made between them (both also being directors of the corporation), whereby in consideration of the use of the property, Mrs. McDonald received from the corporation the benefit of certain work performed in excavating sand on the property; erection of a dam by the corporation which resulted in the formation of a fourteen-acre lake and the construction of roads through the property.
The structure described was employed by the corporation for the prosecution of its business: it had no permanent relation to the improvement of the land; and its use at no time indicated intention by the corporation or the owner of the land to treat the structure as real estate. Significant, and controlling on the question of intention, is the fact that *Page 185 
McDonald and his wife, he as president, and she as secretary of the corporation, signed the chattel mortgage to the Boonton National Bank, thereby declaring that the plant and the structure were treated and considered by them as personal property. There was no intention to incorporate the chattels with the real estate for the uses to which the real estate was put. The facts and circumstances are proof to the contrary. The property under consideration is personal property.
In submitting this matter it was stipulated in court that it be decided on the testimony taken before the receiver and attached to the receiver's petition, in addition to that which was taken before the master.
Decree in accordance herewith.