The question in this case is as to whether certain property consisting of certain tanks, pumps, motors, ice machine, steam boiler, and water heater became part of the real estate on which they were installed so as to pass to complainant Baldwin on a sale of the real estate by the defendant Salmon as receiver of Martin C. Havens, John M. Havens, and Havensdale Farms, Incorporated. Martin C. Havens, the owner of the premises in question, gave the mortgage to complainant Farmers National Bank of Sussex and subsequently, he, John M. Haven and Havensdale Farms, Incorporated, or one or some of them were conducting a creamery on the premises and installed the chattels in question for the purpose of operating the creamery.
The receiver claims that these chattels are not a part of the real estate and is not subject to the liens of the mortgage held by the bank and is not included in the sale of the farm to complainant Baldwin.
Under the modern rule as to fixtures attached to the freehold, the test is not the mere question of attachment, but whether it was the intention of permanently increasing the value of the freehold for the use to which it is devoted. When there is this intention, the chattels become part of the realty as between the owner and his mortgagee. Knickerbocker Trust Co. v. PennCordage Co., 66 N.J. Eq. 305, the court says (at p. 309):
"Whenever chattels have been placed in, and annexed to, a building by their owner as a part of the means by which to carry out the purposes for which the building was erected, or to which it has been adapted, and with the intention of permanently increasing its value for the use to which it is devoted, they become, as between the owner and his mortgagee, fixtures and as much a part of the realty as the building itself. And this is true notwithstanding that such chattels *Page 243 
may be severed from, and taken out of, the building in which they are located without doing any injury either to them or to it and advantageously used elsewhere, and notwithstanding that the building itself may thereafter readily be devoted to a use entirely different from that which was contemplated when the annexation was made."
This rule was followed in Sailing v. Sailing, 95 N.J. Eq. 611,
where greenhouses were erected.
The same rule was restated in Chancellor v. Cruse, 83 N.J. Eq. 232.
A stipulation was entered into as to the chattels in question and among other things, it was stipulated as follows:
"The alterations and additions to the main barn on said farm for creamery purposes were made by Martin C. Havens while he was the owner of said farm.
"The one ten-horse power steam boiler above mentioned is approximately seven and one-half feet tall, nine feet in circumference, weighs about a half ton, and was used to generate steam for sterilizing bottles and equipment of the creamery, and rests on a concrete floor.
"The one one-thousand-gallon water tank for Duro water system is approximately twelve feet long by five feet in diameter, is situate in an annex to the main barn and is connected by pipes to a deep well underneath and pipes running throughout the creamery for purpose of supplying water to the creamery, and the three-horse power electric motor mentioned above was used for pumping water from the well and throughout the water system in the creamery.
"The one five-horse power General Electric motor mentioned above was used for running an ice machine for cooling milk in the creamery.
"The one York three by three ice machine was used for refrigerating purposes in the creamery.
"The one Richardson Boynton hot water heater and tank mentioned above was used for heating water for washing bottles and equipment in the creamery.
"All of the above machinery and equipment being situate in the part of the main barn used for creamery purposes.
"The one thirty-gallon gas tank mentioned above is located *Page 244 
underground outside the building and was used for the storage of gasoline for use in running dairy machinery and for general farm purposes."
It seems clear that the chattels were annexed to the realty so as to carry out the purpose for which the building was adapted, and with the intention of permanently increasing its value for the use for which it was devoted. Under these circumstances, the question as to whether they could be severed from the realty without material injury is immaterial.
The Uniform Conditional Sales act of 1919, which provides for the test as to whether goods are severable without material injury to the freehold, is not applicable here since this case does not involve the rights of a conditional vendor. As was pointed out in the case of the Bank of America v. La ReineHotel Corp., 108 N.J. Eq. 567 (at p. 576), the Conditional Sales act does not affect the basic law of fixtures except as to matters coming within its purview.
I accordingly find that the goods in question became part of the freehold and title to them passed to complainant Baldwin, subject to the liens of the mortgages of the complainant bank. A decree will be advised accordingly.